AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>TOMMY LEE HOLT<br><br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)        5:20-mj-1024-PRL<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____November 5, 2019_____ in the county of _____Marion_____ in the

_____Middle_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(d) | Possession of an Unregistered NFA Firearm; |
| 26 U.S.C. § 5861(f) | Manufacturing of an Unlawful NFA Firearm. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Brendan Ferguson, Task Force Officer - ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __2/21/20__

_____
*Judge's signature*

City and state:                    Ocala, Florida

Philip R. Lammens, U.S. Magistrate Judge
*Printed name and title*

**STATE OF FLORIDA**  **MDFL CASE NO. 5:20-mj-1024-PRL**

**COUNTY OF MARION**

## AFFIDAVIT OF ATF TASK FORCE OFFICER BRENDAN FERGUSON IN SUPPORT OF A CRIMINAL COMPLAINT

I, Brendan Ferguson, being duly sworn, do hereby state the following:

### INTRODUCTION

1.     I am a sworn Law Enforcement Officer with the City of Ocala Police Department (OPD) and have been so employed for over five years. I am also a Task Force Officer (TFO) working with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Prior to my current assignment, I worked as a detective assigned to the Intelligence Unit of the OPD's Investigative Services Bureau. I also served as a police officer assigned to the OPD's Community Policing Bureau. I also have held the title of Field Training Officer, responsible for the training and certification of new law enforcement officers. During my tenure as a law enforcement officer, I have been involved in numerous firearm and narcotics investigations.

2.     As a result of my training and experience as an ATF TFO, I am familiar with 26 U.S.C. § 5861(d) and (f), which make it unlawful for any person to receive or possess a firearm, or to make a firearm, which is not registered to him in the National Firearms Registration and Transfer Record.

The term "firearm" is further defined under 26 U.S.C. § 5845(a) and (f) as including a destructive device, such as an incendiary bomb.

3.    A common type of incendiary bomb is a "Molotov cocktail"—a bottle containing a flammable liquid and a wick that is ignited and thrown with the purpose of starting a fire. Courts have held that Molotov cocktails are destructive devices (incendiary bombs) as contemplated under Title 26. *See United States v. Wilson*, 546 F.2d 1175, 1177 (5th Cir. 1977) ("While gasoline, bottles and rags all may be legally possessed, their combination into the type of homemade incendiary bomb commonly known as a Molotov cocktail creates a 'destructive device.'"); *United States v. Ross*, 458 F.2d 1144, 1145-46 (5th Cir. 1972) ("A Molotov cocktail has no purpose apart from criminal activities.").

4.    Pursuant to the provisions of the National Firearms Act (26 U.S.C. § 5801 et seq.), certain inherently dangerous firearms (including destructive devices) must be registered with ATF prior to being possessed by an individual. Likewise, before such destructive devices can be constructed, an individual must obtain advanced authorization from the Secretary of the Treasury and/or the Attorney General of the United States. These processes require the applicant to provide their personal identifying information including their full name, address, date of birth and Social Security number.

ATF maintains records of these types of firearms in a database known as the National Firearms Registration and Transfer Record. The failure to obtain advanced approval to construct such devices and the failure to register them with ATF (including incendiary bombs) result in the criminal offenses at issue in this case.

## PURPOSE OF THE AFFIDAVIT

5.     I am submitting this affidavit in support of a criminal complaint charging the defendant, TOMMY LEE HOLT (HOLT), with the federal criminal offenses listed above.



*TOMMY LEE HOLT*

I have obtained the information set forth in this affidavit from the investigation conducted by other police officers, deputies and detectives, as well as my own investigation in this case. As the affidavit is intended only to

3

show that there is probable cause for the arrest of HOLT, it does not contain all of my knowledge about this case.

## INCIDENT LOCATION

6.     The location of this incident was 3895 Southwest 13th Street, Ocala, Marion County, Florida.[1] This privately owned business building has several different entities leasing out separate suites. The Department of Children and Families (DCF) occupies one suite under a state lease. Also within the building are Medicaid and Food Stamp offices. Occupying a warehouse portion of the same building is another business, E-One, a parts distributor for the construction of emergency vehicles, such as firetrucks. This particular E-One location houses parts and supplies that ultimately are shipped all across the United States for such purposes.

## PROBABLE CAUSE

7.     As detailed below, HOLT assembled eight destructive devices (Molotov cocktails) from an assortment of beer bottles, paper bags, and gasoline. HOLT never had obtained advanced approval to construct such destructive devices under 26 U.S.C. §§ 5822 and 5841, nor had he registered them with ATF in the National Firearms Registration and Transfer Record, as required by federal law. After assembling the destructive devices, HOLT took

---

[1] This location is within the Middle District of Florida.

4

them to the Ocala business building housing, among other entities, a State of Florida DCF Office. Once there, HOLT ignited the Molotov cocktails and unsuccessfully attempted to use them to start a fire.



*The Molotov cocktails possessed by Holt.*

8.    On or about February 18, 2020, ATF records checks confirmed that HOLT never had registered in his name any of the destructive devices in the National Firearms Registration and Transfer Record, as required by federal law. Consequently, HOLT could not lawfully possess the destructive devices in this case. He also had failed to obtain the advanced approval required under 26 U.S.C. §§ 5822 and 5841 before manufacturing these destructive devices.

9.    On or about the morning of November 5, 2019, HOLT traveled to a gas station at 3928 West Silver Springs Boulevard,Ocala—less than a mile

5

from the eventual incident location. HOLT arrived at the gas station with an empty clear plastic container. While there, HOLT filled the plastic container with gasoline that he purchased. Afterward, he went inside the gas station and obtained a 12-pack of Bud Light beer in glass bottles. HOLT then walked away from the gas station, heading south on SW 38th Avenue. Surveillance cameras at the gas station captured these images of HOLT that day:

  

*Video surveillance images showing HOLT with the gasoline container and beer bottles.*

10.    Within a few minutes, HOLT stopped in front of another nearby business at 900 Southwest 38th Avenue, Ocala. This building was just across the street from the DCF office. Employees at the business observed HOLT walking through their property while carrying the plastic container of gasoline and the 12-pack of bottled beer.

11.    Employees next observed HOLT pouring out the contents of the beer bottles on their property. When the employees asked Holt to leave, Holt

6

responded, "I will when I'm done pouring it out." Holt then walked towards the DCF building carrying the plastic container of gasoline and the box with empty beer bottles.

12.     At the DCF office, several employees were in an outdoor smoking area on the side of the building when HOLT arrived. They observed HOLT walking up to the chain-link fence surrounding this smoking area. HOLT set down the box containing the beer bottles, which now had been filled with gasoline and fitted with paper wicks. The DCF employees observed HOLT light the wicks on the beer bottles in the box as well as another beer bottle in his hand. After lighting the wicks, a DCF employee heard HOLT yell, "F**k you!" Just as HOLT seemed poised to throw the bottle in his hand, he dropped it onto the ground (presumably, because it had become too hot to handle). The employees then observed HOLT walk away from the building, leaving behind the burning, gasoline-filled beer bottles. A maintenance employee was soon able to extinguish the fires.



*HOLT's Molotov cocktails by the chain-link fence at the back of the DCF office.*

13.    Marion County Sheriff's Deputy Roy Johnson, who was stationed at the DCF building, quickly responded to the situation. Deputy Johnson observed HOLT near the DCF office. A DCF employee who had witnessed the incident confirmed to Deputy Johnson that HOLT was the same person who had just set the fire.

14.    Deputy Johnson attempted to stop HOLT and speak with him. HOLT refused to comply with Deputy Johnson's commands and fled from him on foot. Deputy Johnson apprehended HOLT after a short foot pursuit. After placing HOLT under arrest, Deputy Johnson located a lighter that HOLT was clinching in his right hand. Deputy Johnson also recovered methamphetamine from HOLT's person. OPD Detective Alyssa Witt, who

8

subsequently attempted to interview HOLT, noticed that both HOLT and his clothing smelled of gasoline.

15.     After the fire at the DCF office was extinguished, OPD Detective Sean Young located the Bud Light box containing seven beer bottles. On the ground near this box was the eighth beer bottle that had been dropped by HOLT. Each of the eight bottles had a paper wick in the neck that had burnt down to the top of the bottle. All the bottles were filled approximately half-full with gasoline.

16.     State Fire Marshal Officer David Young responded with his service K-9 partner. The K-9 is trained to detect the odor of accelerants, such as gasoline. The K-9 soon alerted to the odor of accelerants on the Bud Light beer box.

17.     Law enforcement located HOLT's clear plastic gasoline container in a dumpster on the business property across the street from the DCF office. The plastic container still held some gasoline, as pictured below:

9



17.    A DCF records check showed that HOLT had 18 prior interactions with DCF. Part of HOLT's contacts with DCF involved the removal of his five minor children, all of whom have been placed in foster care by the agency.

## EXAMINATION OF THE RECOVERED DEVICES

18.    On or about February 11, 2020, ATF Explosives Enforcement Officer Kevin Miner (EEO Miner) examined the modified beer bottles (and contents) recovered from outside the DCF office.   An ATF forensic laboratory already had confirmed that these bottles had contained gasoline.

19.    Based upon his examination, EEO Miner determined that these modified beer bottles were properly classified as incendiary bombs in the form of Molotov cocktails.  Accordingly, each constituted a "destructive device" as contemplated by 26 U.S.C. § 5845(a) and (f).  As they are inherently

10

dangerous weapons, such destructive devices are subject to the federal registration requirements specified in 26 U.S.C. §§ 5822 and 5841.

## RECORDS SEARCH

20.    On or about February 18, 2020, ATF records checks confirmed that HOLT never had registered any of the destructive devices from this case in his name with the National Firearms Registration and Transfer Record. He also had failed to obtain the advanced approval of the Secretary of the Treasury or the Attorney General of the United States prior to manufacturing these destructive devices (as contemplated by 26 U.S.C. §§ 5822 and 5841). Consequently, HOLT could not have lawfully manufactured or possessed the destructive devices in this case.

11

## CONCLUSION

21.     Based on the foregoing, I respectfully submit that there is

probable cause to believe that HOLT has committed violations of 26 U.S.C. §

5861(d) and (f).

This concludes my affidavit.

Brendan Ferguson
Task Force Officer, ATF


Subscribed and sworn to before me
on this ___21___ day of February, 2020.


The Honorable Philip R. Lammens
United States Magistrate Judge

12